ELLIOTT AND OTHERS v. HORN AND OTHERS.

1. A purchase of land by a father, in the name of his son, for the purpose of defrauding his creditors, is void as against creditors, or subsequent purchasers from the father, though they have notice of the conveyance to the son.

2. A father entered land in the name of the son, for the purpose of defrauding his creditors, afterwards sold the land, and by his direction, the son conveyed during infancy to the purchaser. On his coming of age, he conveyed the same land to another, who brought suit. Held, that as his conveyance during infancy was such as the law would have compelled him to make, he could not disaffirm it on attaining his majority.

Error to the Circuit Court of Greene.

TRESPASS to try title, by the defendants, against the plaintiffs in error, to eighty acres of land in Greene county.

From a bill of exceptions it appears, that the plaintiffs, to prove title to the land sued for, produced and read a patent from the United States to one John Cobb, bearing date the 20th of August, 1826, and a deed for the said land, executed by John Cobb, to Edwin Cook, dated 23d December, 1838, and then proved that Edwin Cook died intestate, and that the plaintiffs are his children and heirs at law, and that the defendants, as the heirs at law of one T. R. Elliott, were in the possession of the land, at the commencement of this suit.

The defendants, to show title, produced and read a deed for the land from John Cobb, executed to one J. E. Herndon, on the 2d February, 1831, and a deed from Herndon to T. R. Elliott, on the 7th August, 1833. That Elliott, under and by virtue of his deed from Herndon, went into possession, and continued in possession until his death, and that the defendants, as his heirs, have had possession.

· It was admitted that John Cobb was an infant, when he executed the deed to Herndon, and was of full age, when he executed the deed to Cook; and it was proved that El-

liott knew when he purchased from Herndon, that Cobb was an infant when he conveyed to Herndon.

The defendant, to prove that the deed to Herndon was binding on Cobb, though an infant, offered evidence to prove that the land was in fact entered by one James Cobb, and paid for by him, with his own money. That James Cobb was the father of John, who was at the time an infant of tender years, having no separate estate; the father having a wife, and three other infant children. That he was in indigent circumstances when he entered the land, and entered it in the name of his son to defraud his creditors. That Herndon was a creditor of the father, at the time he took the deed, but not at the time the land was entered. That the father sold the land to Herndon, in payment of the debt, and by his direction John Cobb, the son, executed the deed. To this evidence the plaintiff objected as irrelevant and immaterial, and the court sustained the objection, holding that the facts, if proved, would not validate the deed from him to Herndon, to which the defendant excepted.

The defendants also insisted that the deed from John Cobb to Edwin Cook, was void by reason of the adverse possession of Elliott, at the time of such conveyance. But the court charged the jury, that though a deed for land in the adverse possession of another was void, that the facts of this case created an exception to the rule, and that an infant who had made a deed for lands during his minority, might at majority, disaffirm and annul it, by the execution of a deed to another; and such deed would pass a valid title to the grantee, notwithstanding the land was then in the adverse possession of the first grantee, and might recover the land in this form of action. To all which they excepted, and which they now assign as error.

W. G. Jones, for plaintiff in error.

1. The deed from John Cobb to Edward Herndon was valid and binding on John Cobb, under the circumstances of this case notwithstanding his infancy, because he was but a trustee, and in making the deed he did only what was right—what he ought to have done, and what he was compelable by suit to do—and having done this voluntarily, he is bound by it. [2

Kent's Com. 233, 244; Zouch v. Parsons, 3 Bur. 1794; Dearman v. Dearman, 4 Ala. 521.

2. That John Cobb was to be considered but a trustee for James Cobb, and those claiming under him, is clearly deducible from the following principles and authorities:

Generally, where one buys and pays for land, and takes a deed in the name of anothe, such grantee is regarded as a mere trustee, for him who paid the money. If however, a father buys land in the name of his infant son, from the circumstance of the relationship subsisting between them, it will be *prima facie* evidence that the father intended it as an *advancement* to the son, but circumstances may be shown to prove that it was not intended as an advancement, and if such* was not the intention, a trust results, notwithstanding the relationship. [2 Sto. Eq. 443, 447; Jeremy's Eq. 90; 1 Lomax Dig. 207; Lewin on Trusts, 169; 2 Sug. Ven. 152, 169; Prankerd v. Prankerd, 1. Sim. & S. 1; Guthrie v. Gardner, 19 Wend. 414; Doe ex dem Davis v. McKinney, 5 Ala. R. 719.]

3. The deed from John Cobb to Edwin Cook having been made whilst Elliott was in actual adverse possession of the land, was void. And the title of Cook's heirs rested on this deed alone. [Dexter & Allen v. Nelson, 6 Ala. Rep. 68; Pryor and Fisher v. Butler, January term, 1846; 4 Kent's Com. 446, 449.]

4. The case of an infant is no exception to the rule in regard to adverse possession. The case cited for defendants from 11 Johns. Rep. and 14 Johns. Rep. do not establish any such exception. They were in relation to wild unoccupied lands, of which no person was in actual possession when the second deed was made. And of course no question was raised or decided on adverse possession.

A. GRAHAM, (of Greene,) and ERWIN, contra.

1. There was no resulting trust in favor of James Cobb. The general doctrine, that where the purchase money is paid by one, and the title taken in the name of another, is admitted. But where a father pays the money, and the title is taken in the name of his son, the doctrine is otherwise. This forms an exception to the general rule. It is considered an

Elliott v. Horn.

advancement by the father to the son. [2 Story's Eq. 2 ed., §§ 1202, 1203, and notes; Jeremy's Eq. J. 89 to 92; Grey v. Grey; 2 Swan. R. 598.] Unless an intention to do so is expressed by the father at the time of making the conveyance. [Prankerd v. Prankerd, 1 Sim. & Stew. 1; Grey v. Grey, 2 Swan. Rep. 518.] This refers to a case where the son is an infant unadvanced, living with the father.

2. The deed from John Cobb to Edward Herndon, under whom the plaintiffs claim, being prejudicial to the infant, was void, and not voidable merely.

It cannot but be prejudicial for the infant to part with his land for nothing. It will be found, in looking through all the cases, that an infant's deed for lands of which he was the absolute owner, and for which he received no consideration, has been held to be void. [9 Viner's Ab, Title, Enfant, 375, § 6; Vent v. Osgood, 19 Pick. 573; 2 Kent's Com. 4 ed, 235, et seq, Freeman v. Bradford, 5 Porter, 273.]

3. Whether the deed of the infant be void or voidable, is a question for the court. [Keaur v. Bycott, 2 H. Black. 515; U. S. v. Bainbridge, 1 Mason's Rep.]

4. If the deed to Elliott was not void, it was voidable, and the deed by Cobb to Cook avoided it. [Hoyle v. Stowe, 2 Dev. & Batt. N. C. Rep. 320; Tucker, et al. v. Moreland, 10 Peters, 71.]

ORMOND, J.—The land in controversy was purchased of the United States, by James Cobb, with his own money, but entered at the land office in the name of his son John, then an infant of tender years, for the purpose of defrauding his creditors, he being then greatly embarrassed. This transaction is declared, by the 2d section of the statute of frauds of this State, to be utterly void, not only as to creditors, but as against subsequent purchasers, embracing the substance of the provisions of both the 13th and 27th of Elizabeth.

In respect to the 27th of Elizabeth, the English decisions are uniform, that a voluntary conveyance, although without fraud, will be set aside in favor of a subsequent purchaser for a valuable consideration, though he had full notice of the previous voluntary conveyance. [Townsend v. Windam, 2

Ves. 10; Doe v. Rutledge, Cowp. 711; Fonblanque's Eq., Book 1, c. 4, § 13; Roberts v. Anderson, 3 Johns. C. 376.]

In this case, however, 'the purchase by the father, in the name of the son was fraudulent, as well as voluntary, and according to the established current of decisions, would be void as against subsequent, as well as existing creditors. See this question discussed by Ch. Kent, in Reade v. Livingston, 3 Johns. C. 500. So that whether the purchaser from the father, who was also a subsequent creditor, be considered as a creditor, or as a purchaser with notice of the previous voluntary conveyance to the son, the result under our statute of frauds is the same. We may therefore dismiss from the consideration of this question, all the arguments founded upon the relative situation of these parties, father and son. Ordinarily, this does raise the presumption that the purchase was intended as advancement to the child, and it devolves on one asserting a resulting trust in the father, to establish it. But here, as the intention was to defraud creditors, as against them, and subsequent purchasers from the father, the purchase in the name of the son is a void act, and the effect as to them, is precisely the same as if the land had been entered in the name of the father, instead of the son.

The only difficulty presented by the case arises from the fact, that as the fraudulent entry was made in the name of the son, the patent of the government, the highest evidence of the legal title, issued to the son, and this brings up the question of law, arising upon the two deeds executed by John Cobb, one whilst he was an infant, made at the instance of his father, under which the plaintiffs in error deduce their title, and the other after he came of full age, under which the defendant in error claims.

It may be conceded, that generally the deed of an infant, whether it be a deed of bargain and sale, operating by virtue of the statute of uses, or any other conveyance recognized by our law as a valid transfer of lands, would be disaffirmed, and rendered inefficacious by a subsequent conveyance, made on his attaining majority. But this must certainly be confined to those cases where the infant has a valid title to the lands so conveyed. That was the case of Hoyle v. Stowe, 2 Dev. & B. 322, so earnestly pressed in argument. There

an infant had, by deed of bargain and sale, conveyed his land during his minority, and subsequently on his coming of age, by a similar deed conveyed it to another. The court held the first deed to be voidable by the infant, on his attaining his majority, and that the making of the subsequent deed, avoided the first.

It is perfectly obvious, the case just cited, has but little, if any, resemblance to this. Here the infant, though the legal title was cast upon him, by the fraudulent conduct of his father, had no right to the land against a creditor, or purchaser; when therefore, he conveyed to the purchaser from his father, he merely parted with the naked title, and only did that, which a court of equity would have compelled him to do, and we are unable to perceive any reason for permitting him, by a disaffirmance of this act, to reinvest himself with the title, to be again deprived of it.

We do not understand the law to be, that every act of an infant, though it be by deed, is voidable at his election, on his attaining his majority. It is an ancient maxim of the common law, that "generally, whatsoever an infant is bound to do by law, the same shall bind him, albeit he doth it without suit of law." [Co. Litt. 172, a; 1 Thos. Coke Litt. 205.] This point was so determined in the great case of Zouch v. Parsons, 3 Burr. 1801. That was the case of an infant mortgagee, in whom the title was vested, who, upon the payment of the mortgage debt to the persons entitled to receive it, made a re-conveyance of the land, and the court held, that as this was an act, which by law he could be compelled to perform, his voluntary performance of it, though during minority, should bind him, and he could not afterwards disaffirm it. We are aware that this celebrated judgment has been the subject of some critical animadversion, on account of some of the general positions advanced by Lord Mansfield. The true point of the case has never been seriously questioned, but is admitted to be law, by the highest authority at the present day.

In Tucker v. Moreland, 10 Peters, 67, the decision is approved. The court say, "it was precisely such an act as the infant was bound to do, and would have been compelled

45

to do by a court of equity, as a trustee of the mortgagors, and certainly it was to his interest to do it." So in the case of Hoyle v. Stowe, previously cited from 2 D. & B. 322, whilst condemning some of the general propositions of Lord Mansfield, as too sweeping, it is admitted by the court, that the case was correctly decided. So also Chancellor Kent, in sumning up the doctrine upon this difficult and vexed question, says, " The doctrine of the case of Zouch v. Parsons, has been recognized as law in this country, and is not now to be shaken." See also, 1 Mason, 82; Whiting v. Dutch, 14 Mass. 467 ; Bingham on Infancy, ch. 2.]

Upon this difficult question, what acts of an infant are absolutely void, voidable at his election, or binding on him, though made during infancy, we desire to be understood, as confining ourselves to the precise case before us, which is, that of an infant doing an act which it would have been his duty on arriving at full age to do, and which by law he could have been compelled to do. Such an act, though performed during infancy, is binding on him, and cannot be afterwards disaffirmed.

Upon the other point of the case, we incline to the opinion, that there is no difference between an infant and an adult as to the right to convey a title to land held adversely to the grantor. That a conveyance by an infant, accompanied by a possession held adversely to him, though it may be avoided when he attains his majority, yet he cannot by his deed convey this title to another, so as to invest him with the right to sue in his own name for its recovery. But we waive the decision of this point, as the other is decisive of the case.

Let the judgment be reversed and the cause remanded.